UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| IMANI BUTLER, | ) | Case no. 24-16719 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |

**MEMORANDUM OPINION**

This matter comes after this court partially vacated its September 10, 2025 Order Granting Imani Butler's Motion for Sanctions for Violation of the Discharge Injunction (Dkt. 35).  In its previous order, the court found that Kohn Law Firm, S.C. (Kohn) violated this court's discharge injunction when it sent Debtor, Imani Butler, two Wage Deduction Notices in June and July of 2025 on behalf of CNAC SH, Inc. (CNAC) resulting in a garnishment of Ms. Butler's wages in August 2025. (Dkt. 32).

After CNAC and Kohn moved to vacate the order, certain questions were raised as to whether Amazon, Ms. Butler's employer at the time, had actually garnished her wages.  The court set a separate hearing to determine the appropriate damages incurred by Ms. Butler.  After hearing the testimony of Ms. Butler and the parties' arguments, the court awards Ms. Butler $2,500 for CNAC and Kohn's violation of the discharge injunction and denies Ms. Stemper's, Debtor's attorney, Petition for Attorney Fees and Costs for unreasonableness under sections 329(a) and 330 of the Bankruptcy Code.

**Findings of Fact**

Ms. Stemper filed a motion to reopen Ms. Butler's case on August 18, 2025 to file sanctions against Kohn and CNAC for violating the discharge injunction. (Dkt. 32).  This was granted on August 27, 2026. (Dkt. 33).  On August 29, 2025, Ms. Stemper filed a Motion for Sanctions

Against CNAC SH, Inc. and Kohn Law Firm S.C for Violation of the Discharge Injunction on behalf of her client, Imani Butler. (Dkt. 34).  In the motion, Ms. Stemper alleged that "on August 8, 2025, Debtor['s] wages were . . . subject to garnishment" and that "a garnishment line-item . . . appeared" allowing her access to only $70 per day rather than the $163 she was normally entitled to access. *Id*. at ¶ 27.  Ms. Stemper further alleged that "Debtor suffers from continued fear that her wages will continue to be garnished . . . [and] from financial loss of being unable to access her full pay due to the garnishment and is unable to pay her other bills or provide for her family's needs." *Id*. at ¶ 29–31.  Because CNAC and Kohn failed to appear at the hearing for sanctions, despite receiving proper notice, on September 10, this court granted Ms. Butler's motion. (Dkt. 35), and the case was closed on September 11, 2025. (Dkt 36).

On October 3, 2025, Ms. Stemper filed a second Motion to Reopen Debtor's Chapter 7 Case because CNAC and Kohn failed to comply with this court's September 10 sanctions order. (Dkt. 38).  In support, Ms. Stemper filed a Supplemental Declaration on October 28, 2025 in which she stated that Ms. Butler suffered damages because "Amazon added a garnishment line-item to Debtor's payroll account, withholding 57% of her income between August 8, 2025, and August 31, 2025." (Dkt. 46 at ¶ 4).  Further, at a hearing held on October 15, 2025, Ms. Stemper stated that Ms. Butler's "employer, Amazon, who was tracking the state court action and froze more than half her income for almost a month . . . while [CNAC and Kohn] were serving notices of garnishment." Transcript of Record at 3, *In Re Imani Butler*, 24-16719 (2025) (Dkt. 53).  Ms. Stemper also stated, "Amazon . . . froze [Debtor's] wages" because of the Wage Garnishment Notices. *Id*. at 4–5.

At a hearing held on October 29, 2025, Ms. Stemper stated, "Amazon withheld [Debtor's] wages in anticipation of a forthcoming garnishment order," but that the wages "ultimately were

released." Transcript of Record at 4, *In Re Imani Butler*, 24-16719 (2025) (Dkt. 54).  Ms. Stemper also stated that Ms. Butler "lost access to most of her income for almost a month." *Id*.  Another hearing was held on December 2, 2025 where Ms. Stemper stated that CNAC and Kohn's "collection efforts were ultimately unsuccessful, which we discovered after filing our motion for sanctions, [but Debtor] sustained very real damages as a result of the discharge violations." *Id*. at 5–6. Ms. Stemper also submitted a Declaration on behalf of Imani Butler where she stated that "Amazon confirmed that my wages were being withheld because they had received notice of an ongoing garnishment action." (Dkt. 50 at ¶ 8).  At the end of the December 2 hearing, this court cautioned both parties "that under Rule 11, the allegations that are made in pleadings have to be supportable by evidence." Transcript of Record at 22, *In Re Imani Butler*, 24-16719 (2025) (Dkt. 54).

This matter culminated in a damages hearing held on January 29, 2026 during which Ms. Butler testified that her monthly salary was $5,100 before taxes, but she often took advantage of Amazon's "Anytime Pay" benefit, allowing employees earlier access to their monthly salary on a daily basis.  Ms. Butler testified that she used Anytime Pay throughout her four years with Amazon. When she attempted to use Anytime Pay in August of 2025, she only had access to $70 rather than the usual $163.  She believed that this was due to the garnishment notices she had received earlier in the summer and that as a result, she would be unable to pay her rent.  She testified that based upon this belief, she would not be able to stay in her home and voluntarily gave up her lease and moved into a friend's home with her five children where she continues to live.

At no time during any of the court proceedings did Ms. Stemper introduce into evidence a witness or document that showed that Ms. Butler's wages were garnished in August of 2025. While the court believes Ms. Butler's testimony that something happened that month and she did

3

not have access to Anytime Pay, there was never any proof that this was the result of a garnishment. Although the court repeatedly inquired as to whether there were paystubs or other payroll records demonstrating a garnishment, a paystub or other written evidence that the wages were garnished was never introduced.

## Discussion

### A. Burden of Proof

The Supreme Court instructed in *Taggart v. Lorenzen* that, "A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019). As stated in this court's January 7, 2026 memorandum opinion, Kohn violated the discharge order when it sent two Wage Deduction Notices on behalf of CNAC in June and July of 2025. (Dkt. 65). Having shown this violation occurred, Ms. Butler must prove her damages by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *see also In re Dordevic*, 67 F.4th 372, 379 (7th Cir. 2023).

The court finds that Ms. Butler did demonstrate by a preponderance of the evidence that CNAC and Kohn violated the discharge injunction by sending the two Wage Deduction Notices. Ms. Butler was aware that she had been discharged from any obligation to CNAC when she received a Discharge Order in April of 2025 (Dkt. 29). She testified that she suffered mental and emotional stress after receiving the Wage Deduction Notices. She also testified that she called Amazon, Kohn, CNAC, and her counsel several times to try and resolve the issue. Other than the clear violation of the discharge by sending the Wage Deduction Notices, no evidence of an actual garnishment of her wages by Amazon was put into evidence. Because she believed that her

4

inability to take advantage of Anytime Pay meant she could not afford her monthly rent, Ms. Butler voluntarily gave up her home and moved into a friend's home with her children.

This court finds that $2,500 appropriately compensates Debtor's mental and emotional stress and the labor she had to undertake to attempt to resolve the alleged wage garnishment.

B. **Ms. Stemper Violated Rule 3.3 of the Illinois Rules of Professional Conduct.**

Rule 3.3 of the Illinois Rules of Professional Conduct states, "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Ill. R. Prof'l Conduct R. 3.3(a)(1) (2010). An attorney violates rule 3.3 "by filing false documents . . . and failing to correct them." *In re Liou*, 503 B.R. 56, 72 (Bankr. N.D. Ill. 2013). The Supreme Court holds that "[u]pon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed." *Nix v. Whiteside*, 475 U.S. 157, 169 (1986) (citing Model Rules of Professional Conduct, Rule 3.3, Comment (1983)).

In this case, Ms. Stemper filed false pleadings on August 29, 2025 that she was obligated to correct once she discovered their falseness. Counsel for Kohn and CNAC raised concern that Ms. Stemper's pleadings were false at the hearing held on December 2, 2025, stating that his clients never garnished Ms. Butler's wages. Transcript of Record at 8-9, *In Re Imani Butler*, 24-16719 (2025) (Dkt. 57). In response, Ms. Stemper said, "I'm prepared to prove with evidence that is admissible in this Court that what we have alleged is true." *Id*. at 12. As explained below, this was a false statement.

This court held several hearings throughout the latter months of 2025 and an evidentiary hearing on January 29, 2026 where Ms. Butler testified. Although Ms. Stemper was adamant that

5

wages were garnished, causing Ms. Butler to move to a much smaller home, she never introduced any evidence showing that Ms. Butler's wages were garnished.  It is apparent that she did not have any such evidence, and she repeatedly made false claims to this court that she never corrected.  She simply appears to have not conducted any reasonable inquiry into the facts she asserted.

Ms. Butler testified that she had restricted access to Anytime Pay through much of August but ultimately received her entire pay on time at the end of August.  Despite this testimony, Ms. Stemper never submitted amended pleadings correcting the record.  Evidence only established that Kohn violated the discharge injunction when it sent two Wage Deduction Notices, but Ms. Stemper never demonstrated that the notices were the actual cause of Ms. Butler's inability to access the Anytime Pay program in August.  Ms. Butler testified that she receives paystubs through the app, but no paystubs were introduced into evidence.  Ms. Butler also testified that she believed her wages were garnished because she experienced wage garnishment in 2024, but Ms. Stemper presented no evidence that CNAC or Kohn were responsible for any garnishment in 2025.

Prior to ever proceeding with her vociferous claims that CNAC and Kohn orchestrated a wage garnishment and through a reasonable investigation, Ms. Stemper should have discovered there was no evidence of garnishment.  Following this discovery, Ms. Stemper should have amended her pleadings to say only that the Two Wage Deduction Notices violated the discharge injunction and caused Ms. Butler's damages.  Instead she continued with the false narrative that Ms. Butler's damages were caused by a wage garnishment.

### C. Ms. Stemper Violated Rule 8.4 of the Illinois Rules of Professional Conduct.

Rule of the Illinois Rules of Professional Conduct states, "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Ill. R. Prof'l Conduct R. 8.4(c) (2024).  A violation of rule 8.4 occurs "where the misrepresentation is

6

made knowingly, or where it is made with reckless ignorance of the truth or falsity thereof." *In re Husain*, 533 B.R. 658, 696 (Bankr. N.D. Ill. 2015), *subsequently aff'd sub nom. Matter of Husain*, 866 F.3d 832 (7th Cir. 2017).  As explained below, Ms. Stemper knowingly misrepresented the facts of Ms. Butler's case to this court for five months and never attempted to correct the record.

Testimony at the hearing on January 29, 2025 revealed the scope of Ms. Stemper's dishonesty and misrepresentations to this court.  Ms. Butler's testimony showed that Ms. Stemper knew that Ms. Butler's wages were never garnished as Ms. Butler stated that she timely received her entire paycheck for August.  There was no evidence supporting the allegation that Ms. Butler suffered damages due to a wage garnishment.  There was only evidence that Ms. Butler suffered damages due to the Wage Deduction Notices.

Ms. Stemper further attempted to mislead this court into awarding huge sanctions and attorney's fees by churning this case for five months.  It may be that Ms. Stemper believed Ms. Butler's wages were garnished on August 29, 2025, but Ms. Stemper appeared before this court on September 10, 2025, which, according to Ms. Butler's testimony, was after she received her full pay for August.   Ms. Stemper failed to amend the pleadings or tell the court that Ms. Butler received her full pay.  Instead, Ms. Stemper advocated for aggressive sanctions because CNAC has "been sanctioned and assessed punitive damages before for virtually the exact same conduct in [Illinois]." Transcript of Record at 2, *In Re Imani Butler*, 24-16719 (2025) (Dkt. 52).  Based on the pleadings, this court believed it was sanctioning CNAC and Kohn for garnishing Ms. Butler's wages in violation of the discharge order.  In fact, the only provable violation of the discharge injunction was the two Wage Deduction Notices, a fact Ms. Stemper never even attempted to present to this court and was "severely prejudicial to the administration of justice." *In re Husain*, 533 B.R. at 697.

**D.  Ms. Stemper's Fee Application is Unreasonable under Sections 329 and 330.**

Section 330 of the Bankruptcy Code allows for "reasonable compensation for actual, necessary services rendered by . . . [an] attorney" 11 U.S.C. § 330(a)(1)(A).  The Code also allows bankruptcy courts to deny an attorney's fee application "[i]f such compensation exceeds the reasonable value of any such services." 11 U.S.C. § 329(b).[1]  Under section 329(b), this court may "determine the reasonable value of an attorney's services. If the attorney's fee exceeds the reasonable value of his services, the court can cancel any fee agreement or order the return of that part of the fee found excessive." *In re Jackson*, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009).  The Seventh Circuit has stated that "fee determinations under section 329 rest within the sound discretion of the bankruptcy court." *Matter of Geraci*, 138 F.3d 314, 319 (7th Cir. 1998).  Section 329(b) requires this court to "determine the reasonable value of the services provided by the debtor's attorney after considering the surrounding facts and circumstances." *Id*. at 320.

The facts and circumstances of this case evidence that this court should deny Ms. Stemper's fee application under sections 105(a),[2] 329(b), and 330 of the Bankruptcy Code.  A bankruptcy court may resort to "11 U.S.C. § 105(a) and its inherent powers in order to ensure that all the culpable parties [are appropriately sanctioned] and [does] not abuse its discretion in declining to sanction [a party] under Bankruptcy Rule 9011." *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir.

---

[1] Bankruptcy courts have "the authority under 11 U.S.C. § 329 to order disgorgement of an attorney's compensation to the extent the compensation is unreasonable in light of the attorney's transgressions." *In re Richburg*, 671 B.R. 918, 925 (Bankr. D.S.C. 2025); *see also Matter of Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir. 1993) ("The decision to reduce fees under section 329 is within the sound discretion of the bankruptcy court, which should weigh the equities of the case in determining whether the fees are unreasonable or excessive.").

[2] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C.A. § 105(a).

8

2000).  A sanction "of an assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

In this case, Ms. Stemper repeatedly misrepresented facts to this court and then submitted a Petition for Attorney's Fees and Costs totaling an astonishing $57,057.90. Ms. Stemper claims extensive experience in "consumer litigation matters" but took an unreasonable amount of time to conduct the basic functions of a bankruptcy attorney.  One factor in determining whether attorney's fees are reasonable is "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed." 11 U.S.C. § 330(3)(D).  Ms. Stemper's petition included over seven hours of "research" on "post-discharge collection violations," one hour for court "observation & attendance in case creditor appears," and almost twenty hours on basic motion practice. (Dkt. 77).  The court does not diminish the stress Ms. Butler experienced after receiving the Wage Deduction Notices, but her case was a routine discharge injunction violation that an attorney with "more than 10 years' experience representing clients" should be able to easily handle.

Despite the enormous amount of time Ms. Stemper put into this matter, she failed to provide a scintilla of evidence that Ms. Butler's wages were garnished by Amazon.  The sanctions motion was filed on August 29, 2025, and the hearing on damages was held on January 29, 2026.  In five months, Ms. Stemper did not produce even one document or witness to support her allegation that CNAC and Kohn were responsible for Ms. Butler's restricted access to AnyTime Pay because of a garnishment.

Prior to filing the original motion to reopen the case to proceed with the motion to hold CNAC and Kohn responsible for violating the discharge injunction, Ms. Stemper was required to make a reasonable inquiry as to whether the wages were actually garnished.  Apparently, she did

9

not and continued for five months to claim there was a garnishment caused by CNAC and Kohn. This is simply not a reasonable inquiry, and the court is outraged by this conduct.  Ms. Stemper's request for fees is not reasonable nor is it based upon any significant benefit she provided to her client.  She needlessly wasted the time of this court, counsel for CNAC, and her client.  Her failure to be an honest advocate in this court is most disappointing and does not merit an award of fees.

### E.  Ms. Stemper May Have Violated Rule 11(b).

Rule 9011 of the Federal Rules of Bankruptcy Procedure requires debtors and their attorneys to reasonably inquire regarding the filing of any document to ensure that (1) it was not filed "for any improper purpose," (2) it was based upon a "nonfrivolous [legal] argument," (3) it was filed with adequate evidentiary support, and (4) "the denials of factual contentions are warranted on the evidence." Fed. R. Bankr. Pro. 9011(b)(1)-(4).  The four subdivisions in Rule 9011(b) fall into one of two categories: "the 'frivolousness' clauses (or the 'objective component') and the 'improper purpose' clause (or the 'subjective component')." *In re Am. Telecom Corp.*, 319 B.R. 857, 867 (Bankr. N.D. Ill. 2004) (citing *In re Collins*, 250 B.R. 645, 661-66 (Bankr. N.D. Ill. 2000).

The objective component corresponds to 9011(b)(2)-(4) and requires "a party's attorney [to] perform a reasonable preliminary investigation of the facts and the applicable law before filing a paper in federal court." *In re Am. Telecom Corp.*, 319 B.R. 857, 867 (Bankr. N.D. Ill. 2004). Determining "the reasonableness of an attorney's inquiry necessarily depends upon the circumstances of the particular case." *Matter of Excello Press, Inc.*, 967 F.2d 1109, 1112–13 (7th Cir. 1992).  An attorney's failure "to conduct a reasonable legal inquiry . . . [shows that] the rule has been violated even if he holds a good-faith belief that his client is entitled to relief under the law." *In re Am. Telecom Corp.*, 319 B.R. at 872; and *see Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) ("The objective component is that a paper filed in the best of faith, by a

10

lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make 'reasonable inquiry' beforehand.").

As stated, Ms. Stemper made false statements to this court that she failed to correct and has been dishonest throughout the proceedings.  Rule 11 requires attorneys to make a "reasonable inquiry," which Ms. Stemper did not do.  Had she, she would have discovered that Ms. Butler was fully paid for her August work and that her wages were never garnished.  A reasonable inquiry also would have led Ms. Stemper to discover that there was only evidence to support her claim that Ms. Butler suffered damages as a result of CNAC and Kohn's Wage Deduction Notices.  Had Ms. Stemper engaged in a minimal inquiry, this case could have concluded in September.  Instead, Ms. Stemper chose to drag this case on for five months, accumulating a huge and utterly unreasonable fee.

To be clear, this court is not sanctioning  Ms. Stemper under Rule 11 as it never ordered a Rule to Show Cause as required under Rule 11. Fed. R. Bankr. P. 9011(4)(b)(ii).  The denial of fees for multiple violations of the Illinois Rules of Professional Conduct should suffice to demonstrate the importance of honest statements and filings in this court.

### Conclusion

Ms. Stemper violated rules 3.3 and 8.4 of the Rules of Professional Conduct when she submitted pleadings that were not supported by evidence.  As a result, this case dragged on for month making her fee request unreasonable, and this court denies it under sections 329 and 330 of the Code.  CNAC and Kohn are ordered to pay Ms. Buter $2,500 on or before February 11, 2025

for their violation of the discharge injunction.  Proof of the payment should be submitted on the

docket of this case on or before February 13, 2026.

Dated: February 3, 2026

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge

12